No. 22-60397

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

HEALTHY GULF; SIERRA CLUB,
*Petitioners*,

v.

UNITED STATES ARMY CORPS OF ENGINEERS;
COLONEL STEPHEN MURPHY, in his official capacity as
New Orleans District Commander, U.S. Army Corps of Engineers;
MARTIN MAYER, in his official capacity as Chief, Regulatory
Division, New Orleans District, U.S. Army Corps of Engineers,
*Respondents*.

On Petition for Review of Action by the
U.S. Army Corps of Engineers

**REPLY IN SUPPORT OF MOTION FOR JUDICIAL NOTICE BY
RESPONDENT U.S. ARMY CORPS OF ENGINEERS**

TODD KIM
*Assistant Attorney General*

Of Counsel:                          REBECCA JAFFE
                                     JUSTIN D. HEMINGER
MILTON BOYD                          *Attorneys*
GREGORY MCDONOUGH                    Environment and Natural Resources
*Attorneys*                          Division
Office of the Chief Counsel          U.S. Department of Justice
U.S. Army Corps of Engineers         Post Office Box 7415
                                     Washington, D.C. 20044
                                     (202) 514-5442
                                     justin.heminger@usdoj.gov

## CERTIFICATE OF INTERESTED PERSONS

No. 22-60397
*Healthy Gulf; Sierra Club,*
*v.*
*U.S. Army Corps of Engineers;*
*Colonel Stephen Murphy; and Martin Mayer*

Under Circuit Rule 28.2.1, Federal Respondents are governmental

parties that need not furnish a certificate of interested persons.


/s/ *Justin D. Heminger*
JUSTIN D. HEMINGER

*Counsel of Record for Respondents*
*U.S. Army Corps of Engineers,*
*Colonel Stephen Murphy, and*
*Martin Mayer*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................i

TABLE OF AUTHORITIES .................................................................iii

ARGUMENT ...................................................................................... 1

I.    Judicial notice of the Big Lake Fuels materials is
      appropriate ................................................................................ 1

      A.    The materials meet the standard for judicial
            notice ................................................................................ 1

      B.    The materials may be considered as to the Corps'
            harmless error argument ........................................................ 2

      C.    Supplementing the record is unnecessary because
            the materials are relevant for purposes other
            than the merits .................................................................... 5

II.   The Court should consider the Big Lake Fuels
      materials for limited purposes ......................................................... 6

      A.    The materials show that any error in the Corps'
            alternative analysis was harmless ....................................... 7

      B.    The materials support remand without vacatur if
            the Court found a prejudicial error in the
            alternatives analysis ............................................................. 12

CONCLUSION ................................................................................... 14

CERTIFICATE OF COMPLIANCE ..................................................... 15

CERTIFICATE OF DIGITAL SUBMISSION ....................................... 16

CERTIFICATE OF SERVICE ............................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
    988 F.2d 146 (D.C. Cir. 1993)...................................................... 12

*City of Shoreacres v. Waterworth,*
    420 F.3d 440 (5th Cir. 2005) .......................................................11

*Dixon v. Toyota Motor Credit Corp.,*
    794 F.3d 507 (5th Cir. 2015) ................................................... 8, 13

*Envirocare of Utah, Inc. v. U.S. Nuclear Regul. Comm'n,*
    194 F.3d 72 (D.C. Cir. 1999) ......................................................... 4

*Nebraska v. EPA,*
    331 F.3d 995 (D.C. Cir. 2003)....................................................... 6

*NLRB v. Wyman-Gordon Co.,*
    394 U.S. 759 (1969) ...................................................................... 4

*Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n,*
    45 F.4th 291 (D.C. Cir. 2022) ....................................................... 4

*SEC v. Chenery Corps,*
    332 U.S. 194 (1947) ...................................................................... 3

*Shinseki v. Sanders,*
    556 U.S. 396 (2009) ...................................................................... 3

*Shrimpers & Fishermen of the RGV v. U.S. Army
    Corps of Engineers,*
    56 F.4th 992 (5th Cir. 2023)........................................................11

*Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n,*
    989 F.3d 368 (5th Cir. 2021) ................................................. 12, 13

*Texas Tech Physicians Associates v. U.S. Dep't of Health &
Human Servs.*,
917 F.3d 837 (5th Cir. 2019) ............................................................. 3

*U.S. Steel Corp. v. EPA*,
595 F.2d 207 (5th Cir. 1979) ........................................................ 7, 8

## Statutes and Court Rules

Administrative Procedure Act
5 U.S.C. § 706 ................................................................................. 3

Fed. R. Evid. 201(b) ......................................................................... 1

Fed. R. Evid. 201(c)(2) ..................................................................... 2

## Federal Regulations

40 C.F.R. § 230.10(a)(2) ................................................................... 9

Respondents (the Corps) request judicial notice of (1) the existence of the Big Lake Fuels Permit, and (2) the geographic location of the Big Lake Fuels Site (collectively, the Big Lake Fuels materials). None of the objections from Petitioners (Healthy Gulf) is an obstacle to this Court taking judicial notice of those materials and considering them for limited purposes other than the merits.

## ARGUMENT

## I.    Judicial notice of the Big Lake Fuels materials is appropriate.

### A.    The materials meet the standard for judicial notice.

The court may judicially notice a fact when it is "not subject to reasonable dispute" either (1) because it is generally known within the court's jurisdiction, or (2) because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). The Corps has explained why the Big Lake Fuels materials meet this standard. Corps' Motion 4-6.

Healthy Gulf offers no argument that the materials fail to meet this standard. *See* Healthy Gulf Response 5. Indeed, Healthy Gulf expressly concedes the basic facts for which the Corps seeks judicial

notice. *See id.* at 15 (stating that "[t]he fact that the Corps issued a permit for the Big Lake Fuels project is not disputed, nor is the geographic location of that project," but contesting whether those facts are properly considered in a vacatur analysis). Thus, the Court should take judicial notice of the materials. *See* Fed. R. Evid. 201(c)(2) (federal courts "must" take judicial notice of an adjudicative fact "if a party requests it and the court is supplied with the necessary information").

In a footnote, Healthy Gulf asserts that the Corps seeks judicial notice for an "excessive" volume of information and that the first ten pages of Exhibit 3 "reliably establish the issuance of" the Big Lake Fuels Permit. Healthy Gulf Response 14 n.3. Yet Healthy Gulf asserts that the materials the Corps submitted fail to show that FERC's Alternative Site 6 is unavailable. *Id.* at 19. The Court should consider the whole Permit when taking judicial notice because that document includes engineering drawings and plans that show the unavailability of Alternative Site 6. *See* Corps Motion, Exhibit 3 at 12-13, 22-25.

**B.    The materials may be considered as to the Corps' harmless error argument.**

Healthy Gulf contends that considering the Big Lake Fuels materials to evaluate the Corps' harmless error argument would violate

the Administrative Procedure Act (APA). Health Gulf Response 8. That
is incorrect.

The APA directs courts to account for the rule of prejudicial error.
5 U.S.C. § 706. The harmless error rule requires courts to carefully
weigh "case-specific factors," including "an estimation of the likelihood
that the result would have been different." *Shinseki v. Sanders*, 556
U.S. 396, 411-12 (2009). And courts must avoid generalizing "too
broadly about particular kinds of errors" because "the specific factual
circumstances in which the error arises may well make all the
difference." *Id*.

While a reviewing court generally must review agency action
"solely by the grounds invoked by the agency," *SEC v. Chenery Corp.*,
332 U.S. 194, 196 (1947), this Court and others have recognized that
the harmless error rule has an important and independent role to play.
*Texas Tech Physicians Associates v. U.S. Dep't of Health & Human
Services*, 917 F.3d 837, 846-47 (5th Cir. 2019); *see* 5 U.S.C. § 706 ("In
making the … determinations [whether to hold unlawful and set aside
agency action, findings, and conclusions], the court shall review the
whole record or those parts of it cited by a party, *and* due account shall

be taken of the rule of prejudicial error." (emphasis added)). The D.C. Circuit, for example, recently found harmless error when the agency had not relied on a legal argument in its decision, but the argument was "both clearly correct and would render remand pointless." *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 45 F.4th 291, 303-04 (D.C. Cir. 2022).

The same is true for factual information subject to judicial notice, though outside the administrative record, that makes clear an agency's error did not prejudice the party seeking judicial review. When "there is not the slightest uncertainty as to the outcome of a proceeding" on remand, the APA permits courts to "affirm an agency decision on grounds other than those provided in the agency decision." *Envirocare of Utah, Inc. v. U.S. Nuclear Regul. Comm'n*, 194 F.3d 72, 79 (D.C. Cir. 1999); *see also NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (plurality) ("To remand would be an idle and useless formality" when "[t]here is not the slightest uncertainty as to the outcome of a proceeding"). The Corps' Big Lake Fuels materials fit into this narrow category. Considering those materials to determine whether Healthy Gulf has suffered prejudice accords with the APA.

4

## C.   Supplementing the record is unnecessary because the materials are relevant for purposes other than the merits.

Healthy Gulf asserts that the Big Lake Fuels materials are inappropriate for judicial notice because they are "irrelevant to the Court's evaluation of the merits of the challenged decision." Healthy Gulf Response 5-6. That assertion confuses the requirements for judicial notice with the purposes for which the Court may consider the materials.

The Corps agrees that the materials are irrelevant to the merits. The Corps made this clear in its Motion. Corps Motion 9-11. The Big Lake Fuels materials are *not* part of the record for the Corps' decision, and the Court should not consider them when reviewing that decision under the APA's arbitrary and capricious standard. *Id*. But the Corps seeks judicial notice of the Big Lake Fuels materials for purposes *other* than the merits—to determine whether any error the Corps made was harmless and whether remand without vacatur is the appropriate remedy. *See* Argument Point II.

Healthy Gulf also claims that the Corps is improperly using judicial notice to introduce materials that are ineligible for

supplementation. Healthy Gulf 6-7. It is true that courts reject attempts to use judicial notice as an alternative to supplementing the record. *See id.* (discussing cases denying judicial notice as a substitute for supplementing the district court record). But the Corps has not requested supplementation, and the Court should not consider the materials when reviewing the merits of the Corps' decision. Corps Motion 10-11.

Here, judicial notice is appropriate, even when the materials are not being used to supplement the record, because the materials are not subject to reasonable dispute, and Healthy Gulf agrees that the Big Lake Fuels Permit has been issued for this geographic location, Healthy Gulf Response 15. *See Nebraska v. EPA*, 331 F.3d 995, 998 n.3 (D.C. Cir. 2003) (taking judicial notice of data published to EPA's website, "[a]lthough the administrative record does not contain these facts.").

## II.   The Court should consider the Big Lake Fuels materials for limited purposes.

As the Corps urged in its Motion (at 6-11), the Court should consider the Big Lake Fuels materials for two limited purposes raised in the Corps' Brief: (1) to evaluate whether any potential error in the Corps' alternatives analysis is prejudicial to Healthy Gulf; and (2) to

evaluate the appropriate equitable remedy, if the Court found a prejudicial error in the alternatives analysis. Healthy Gulf submits many reasons why the Big Lake Fuels materials do not support these arguments, but all lack merit.

### A. The materials show that any error in the Corps' alternative analysis was harmless.

The Big Lake Fuels materials show that any error in the Corps' alternatives analysis has not prejudiced Healthy Gulf. *See* Corps Brief 31-38; Corps Motion 7. Healthy Gulf's objections to that harmless error analysis are flawed. Healthy Gulf Response 9-13.

At the threshold, Healthy Gulf alleges for the first time in responding to the Corps' Motion that the Corps has committed a *procedural* error that cannot be harmless. *See* Healthy Gulf Response 9-13. Invoking *U.S. Steel Corp. v. EPA*, 595 F.2d 207 (5th Cir. 1979), Healthy Gulf asserts that "an error cannot be harmless where 'the Agency's error plainly affected the *procedure* used, and we cannot assume that there was no prejudice to petitioners.'" Healthy Gulf Response 10 (quoting *U.S. Steel*, 595 F.2d at 215 (emphasis added)).

In *U.S. Steel*, this Court concluded that EPA's failure to follow required notice-and-comment procedures was not harmless error. 595

F.2d at 215. By contrast, in its Brief, Healthy Gulf did not assert that the Corps failed to take a required procedural step in the Section 404 or 404(b)(1) Guidelines process. *See* Healthy Gulf Brief 1-74. At this late stage, it cannot introduce a new argument that the Corps committed a procedural violation. *See Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are waived.").

Although Healthy Gulf has waived any argument about procedural violations, the Corps *did* follow the required procedures under the Clean Water Act. As the Corps explained in its Brief (at 24-31), it conducted a robust alternatives analysis, provided an opportunity for notice and comment, and issued the Section 404 permit after concluding that Driftwood's proposed project was the least environmentally damaging practicable alternative (LEDPA). Contrary to Healthy Gulf's late assertion, there is no "procedural" error that "tainted [the] entire review process." Healthy Gulf Response 10.

Healthy Gulf has raised a *substantive* challenge to the sufficiency of the Corps' alternatives analysis under the Clean Water Act, asserting that the Corps had failed to select the LEDPA. Healthy Gulf Brief 35-

47. This substantive challenge can succeed only if FERC's Alternative Site 6 was a *practicable* alternative that would be less environmentally damaging than Driftwood's proposed project. Thus, in applying the harmless error rule, the Court should consider whether the Corps would have arrived at the same result if it had evaluated FERC's Alternative Site 6. Because Driftwood does not own Alternative Site 6, this question turns on whether Alternative Site 6 would still be "practicable" because it "could reasonably be obtained, utilized, expanded or managed in order to fulfill the basic purpose of the proposed activity." 40 C.F.R. § 230.10(a)(2).

It could not. The Corps' prior issuance of the Big Lake Fuels Permit in 2015, authorizing a conflicting use on the site, shows that the site could not reasonably be obtained by Driftwood when the Corps issued the 4040 permit to Driftwood in 2019. That conflicting use establishes that the Corps' decision is clearly correct. Corps Brief 31-38.

Latching onto the Corps' statement that the Big Lake Fuels Project covers a large portion of FERC's Alternative Site 6 (but not all of it), Healthy Gulf suggests that it is not clear that the site was impracticable for Driftwood's liquefied natural gas (LNG) facility.

9

Healthy Gulf Response 11. But as the Corps pointed out in its Brief (at 34-36), it is easy to see from the maps how the Big Lake Fuels Site and Alternative Site 6 overlap. That overlap includes the critical river frontage, where Driftwood would need berths allowing LNG carriers to dock. And the maps and engineering drawings confirm that the Big Lake Fuels Project is a sprawling facility that covers much of the site. Corps Motion, Exhibit 5 at 6-11. It is indisputable the Big Lake Fuels Project is a conflicting use that made that site unavailable and thus impracticable.

Seeking to sow enough doubt to infer prejudicial error, Healthy Gulf suggests other questions the Corps might have considered. Healthy Gulf 11-12. Was the Big Lake Fuels Permit "likely to expire under its own terms"? Did the Corps consider if FERC's Alternative Site 6 could be modified to account for the presence of the Big Lake Fuels project? Could that project be modified or moved before construction to accommodate the Driftwood facility?

This speculation is resolved by the Big Lake Fuels materials. The Big Lake Fuels Permit was issued in 2015 for a five-year period, and the Corps modified the permit in January 2021. Corps Motion, Exhibit 3

at 1 (authorizing work through June 30, 2020); *id.*, Exhibits 4, 5, 6. The Big Lake Fuels Project occupies much of the site, including the critical river frontage. A "mere, unsupported theoretically possibility of acquiring the alternative site, which is all that [Healthy Gulf] offers, does not constitute a showing that the alternative site is reasonably obtainable, much less that the Corps' decision is arbitrary and capricious." *City of Shoreacres v. Waterworth*, 420 F.3d 440, 449 (5th Cir. 2005).

Finally, Healthy Gulf suggests that if the Corps had alerted the public to FERC's Alternative Site 6 and the Big Lake Fuels Permit, then the public might have submitted comments proposing modifications to accommodate both projects at the same site. Healthy Gulf Response 13. This is another version of Healthy Gulf's belated procedural claim. Moreover, when the Corps provided public notice and an opportunity to comment on Driftwood's permit application, no commenter suggested that Alternative Site 6 was the LEDPA, or even an available alternative. *See* Corps Brief 26-31 (administrative exhaustion argument); *see also Shrimpers & Fishermen of the RGV v. U.S. Army Corps of Engineers*, 56 F.4th 992, 997-98 (5th Cir. 2023)

(applying administrative exhaustion to petitioners' alternatives

argument).

### B. The materials support remand without vacatur if the Court found a prejudicial error in the alternatives analysis.

If the Court found an error in the Corps' alternatives analysis that

prejudiced Healthy Gulf, the Big Lake Fuels materials show that any

such error is not serious enough to warrant vacatur. Corps Brief 68-69.

Healthy Gulf agrees that extra-record evidence "can be considered on

the issue of remedy if properly presented." Healthy Gulf Response 13.

Yet it contends that the Big Lake Fuels materials "have no impact on

the 'seriousness of the [agency action's] deficiencies." *Id.* at 15 (quoting

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 151

(D.C. Cir. 1993)). That is plainly wrong.

"Remand, not vacatur, is generally appropriate when there is at

least a serious possibility that the agency will be able to substantiate its

decision given an opportunity to do so." *Texas Ass'n of Mfrs. v. U.S.*

*Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021).

Healthy Gulf's substantive claim is that the Corps violated the Clean

Water Act by failing to select Alternative Site 6 as the LEDPA for

Driftwood's LNG facility. Healthy Gulf Brief 35-48. The Big Lake Fuels materials directly respond to that claim. Those materials show there is at least a "serious possibility" that the Corps "will be able to remedy" any defect in the alternatives analysis by explaining that Alternative Site 6 was unavailable and thus impracticable. *Id.*

Here too, Healthy Gulf returns to its new claim for a procedural violation. It insists that "the Corps' failure here necessitates conducting a new and adequate decision-making *process* on remand." Healthy Gulf Response 18 (emphasis added). That argument comes too late. *See Dixon*, 794 F.3d at 508. And in any event, the Corps' permitting process for Driftwood satisfied all procedural requirements. *See above* p. 8.

Finally, Healthy Gulf contends that if the Court vacated Driftwood's Permit, Alternative Site 6 might be available today. Healthy Gulf Response 20. The documents the Corps submitted with its Motion show that the site was unavailable in 2019 and that the permittee has continued to pursue the Big Lake Fuels Project since then. And Healthy Gulf's suggestion that the Corps should redo its entire Clean Water Act analysis in these circumstances would be highly disruptive to the Corps and Driftwood. *See* Corps Brief 69-71.

# CONCLUSION

The Court should take judicial notice of the Big Lake Fuels Permit issued in 2015 and modified in 2021 and the location of the Big Lake Fuels Site.

Respectfully submitted,

/s/ *Justin D. Heminger*
TODD KIM
*Assistant Attorney General*

Of Counsel:

MILTON BOYD
GREGORY MCDONOUGH
*Attorneys*
Office of the Chief Counsel
U.S. Army Corps of Engineers

REBECCA JAFFE
JUSTIN D. HEMINGER
*Attorneys*
Environment and Natural Resources
Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-5442
justin.heminger@usdoj.gov

February 6, 2023
DJ 90-13-9-16642

# CERTIFICATE OF COMPLIANCE

I certify that:

1.    This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Rule 32(f), the body of the document contains 2,600 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

/s/ *Justin D. Heminger*
JUSTIN D. HEMINGER

*Counsel of Record for Respondents*
*U.S. Army Corps of Engineers,*
*Colonel Stephen Murphy, and*
*Martin Mayer*

15

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that:

(1)    all required privacy redactions have been made per 5th Cir. R. 25.2.13;

(2)    the electronic submission is an exact copy of the paper document, if paper copies are required, 5th Cir. R. 25.2.1; and

(3)    the document has been scanned for viruses with the most recent version of a commercial virus scanning program, Windows Defender Antivirus, and according to the program is free of viruses.

/s/ *Justin D. Heminger*
JUSTIN D. HEMINGER

*Counsel of Record for Respondents*
*U.S. Army Corps of Engineers,*
*Colonel Stephen Murphy, and*
*Martin Mayer*

## CERTIFICATE OF SERVICE

I certify that on February 6, 2023, I electronically filed the

foregoing using the court's CM/ECF system, which will notify all

registered counsel.

/s/ *Justin D. Heminger*
JUSTIN D. HEMINGER

*Counsel of Record for Respondents*
*U.S. Army Corps of Engineers,*
*Colonel Stephen Murphy, and*
*Martin Mayer*